**DISTRICT COURT OF GUAM**
**TERRITORY OF GUAM**

JASON COBURIAN ORTIOLA,

    Petitioner,

vs.

UNITED STATES OF AMERICA,

    Respondent.

Criminal Case No.   05-00047
Civil Case No.   06-00037

**ORDER**

On March 16, 2007 this matter came before the court for an evidentiary hearing on Petitioner Jason Coburian Ortiola's ("Ortiola") Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("Motion").[1] After considering the testimony presented at the evidentiary hearing, the parties' arguments and submissions, as well as relevant caselaw and authority, the court hereby **DENIES** Ortiola's motion and issues the following decision and order.

## BACKGROUND

On August 24, 2005, Ortiola, by consent, appeared before Magistrate Judge Joaquin V.E. Manibusan, Jr. Pursuant to Rule 11, FED. R. CRIM. P. Ortiola entered a guilty plea to both counts contained in the Indictment charging him with Distribution of Methamphetamine Hydrochloride in violation of 21 U.S.C. § 841(a)(1) and Carrying a Firearm During a Drug Trafficking Offense in violation of 18 U.S.C. § 924(c). *See* Indictment, Consent to Rule 11 Plea, and Plea Agreement, Docket Nos. 1, 21 & 19, respectively. At the time of his plea, Ortiola stipulated to

---

[1] Ortiola filed his initial petition *pro se.* Thereafter, the court appointed the Federal Public Defender to represent Ortiola for purposes of the evidentiary hearing in this matter.

the following:

> [Ortiola] was employed as a police officer with the Guam Police Department. On June 3, 2005, [Ortiola] sold approximately one-half (.5) gram net weight of methamphetamine hydrochloride (ice) to another person for $300. At that time [Ortiola] was in uniform and was carrying his service pistol, a Smith & Wesson .9mm pistol, Model 5906, Serial Number TVD2476. This firearm was carried during and in relation to the crime of distribution of a controlled substance.

*See* Plea Agreement, Docket No. 19 at 6.

On that same day, Judge Manibusan issued a Report and Recommendation concerning Ortiola's guilty pleas. He recommended that the District Court Judge accept Ortiola's pleas, adjudicate him guilty and proceed to impose sentence. *See* Docket No. 22. On October 4, 2005, Judge Lloyd George, signed an order accepting Ortiola's pleas and adjudicated him guilty. *See* Docket No. 25.

On September 20, 2006, Ortiola was sentenced to serve a total of six (6) years incarceration[2] to be followed by a total of three (3) years supervised release. The Judgment of Conviction was entered on the docket on September 22, 2006. *See* Docket No. 43. Ortiola did not file a notice of appeal within ten (10) days after entry of the Court's judgment. His conviction became final on October 2, 2006. *See,* FED R. APP. P. 4(b); *United States v. Schwartz*, 274 F.3d 1220, 1223 (9th Cir. 2000) (holding a conviction is final if a notice of appeal is not filed within ten (10) days). On December 8, 2006, Ortiola, *pro se* and incarcerated, brought this motion pursuant to 28 U.S.C. § 2255.

At the evidentiary hearing on Ortiola's petition, Ortiola's former attorney, Howard Trapp testified that he has in excess of 40 years experience in criminal defense and appellate matters. He discussed his relationship with Ortiola including the circumstances surrounding the time before and immediately after Ortiola's sentencing.

Attorney Trapp testified that after Ortiola pled guilty, the government sealed his case and delayed his sentencing for a significant period of time in hopes that media attention would die

---

[2] Ortiola received twelve (12) months incarceration on Count One and a mandatory, consecutive sixty (60) months incarceration as to Count Two.

down enabling Ortiola to provide substantial assistance regarding other matters. Ultimately, on September 14, 2006, Attorney Trapp met with Ortiola in preparation for the impending sentencing. Attorney Trapp indicated that he routinely explains the appeal rights, including the distinction between direct appeal and collateral attack, as well as the difference between appealing the conviction and appealing the sentence imposed.[3] In making the latter distinction, it is common practice for him to explain the rights retained under the plea agreement by utilizing words to the effect of: "After the sentencing, if I feel or you feel anything is wrong about the sentencing, you're not locked into it, you can take an appeal from it." Attorney Trapp asserts that he did the same in this case when speaking to Ortiola.

In the course of his testimony, Attorney Trapp indicated that during this meeting he also discussed the pending objection to the application of a two level enhancement for "abuse of a position of public trust" pursuant U.S.S.G. § 3B1.3. This discussion also involved Attorney Trapp informing Ortiola that if successful, under the guidelines his exposure would be two months less.[4] Mr. Trapp testified that he explained to Ortiola that if the court did not agree with him, there would be little to no chance of prevailing on appeal.

Attorney Trapp described Ortiola as a quiet, respectful, bright individual who would ask questions if he needed clarification on an issue. Attorney Trapp indicated that after the discussion on September 14, 2006, he believed that Ortiola understood and agreed with his assessment of the case including the decision not to appeal regardless of the outcome of the objection to the abuse of trust enhancement.

After the sentencing on September 20, 2006, Mr. Trapp testified that the sentence imposed was what he had expected and discussed with Ortiola on prior occassions. He stated that he approached Ortiola as they were packing up to leave the courtroom and mentioned that they had already talked about not appealing. Ortiola acquiesced. Mr. Trapp indicated that in

---

[3] *See* Plea Agreement at ¶ 10, Docket No. 19.

[4] The guideline range for Count One with the enhancement was 12-18 months (Offense Level 13, Criminal History Category 1) and without it was 10-16 months (Offense Level 12, Criminal History Category 1).

3

light of the post-sentencing instructions of the court and his prior discussions with Ortiola regarding not pursuing an appeal, he was satisfied that "Ortiola understood and . . . [they] were on the same wavelength" concerning not appealing. He further stated that at no time that day or within the ten-day deadline did Ortiola give him any indication that he wanted to appeal his sentence. Nor did Ortiola give him any indication that he was dissatisfied with his sentence. Attorney Trapp testified that had Ortiola so indicated, he would have explored that with Ortiola and filed a notice of appeal immediately as he is very aware of and sensitive to the deadlines for filing an appeal.

After the deadline for filing his notice of appeal had run, Ortiola contacted Attorney Trapp to inquire about a possible sentence reduction. Ortiola told him that he had letters from members of the community to support such a request. Attorney Trapp testified that he told Ortiola that there was no current basis for a sentence reduction. Such a request must come from the government as a result of cooperation. Ortiola was informed that he could try again to provide such assistance and then ask the government to bring such a motion. Attorney Trapp indicated that as the time drew nearer for Ortiola to surrender himself for incarceration, he received several phone calls from Ortiola asking him to file a request for a sentence reduction. Attorney Trapp refused indicating there was no legal basis to do so.

## ANALYSIS

28 U.S.C. § 2255 allows persons in federal custody to collaterally challenge the constitutionality, legality or jurisdictional basis of the sentence imposed by a court.[5] *See, United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240 (1979). Since such a challenge calls

---

[5] The statute states, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

into question a conviction's finality, collateral relief is an extraordinary remedy that should only be granted when a fundamental defect could have resulted in a complete miscarriage of justice, or the rudimentary rules of fair procedure were not followed. *United States v. Timmreck*, 441 U.S. 780, 783, 99 S. Ct. 2085, 2087 (1979). In a proceeding under 28 U.S.C. 2255, the burden of proof is on the petitioner to show by a preponderance of the evidence that the petitioner is entitled to collateral relief. *See Moore v. Michigan,* 355 U.S. 155, 161, 78 S.Ct. 191 (1957); *Johnson v. Zerbst*, 304 U.S. 458, 469, 58 S.Ct. 1019, 1024 (1938); *see also* 16 FEDERAL PROCEDURE, L.ED. § 41:549.

Ortiola, in filing his petition asserts ineffective assistance of counsel (Attorney Trapp) at sentencing. Ortiola claims that Attorney Trapp was ineffective for failing to discuss with him a potential appeal[6] or show interest in his case subsequent to his sentencing.

To demonstrate ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's representation fell below objective standards of reasonableness, and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668, 688 (1984). Where ineffective assistance of counsel is alleged based on the failure of counsel to file a direct appeal, the court is governed by *Roe v. Flores-Ortega,* 528 U.S. 470, 120 S.Ct. 1029 (2000); *see also United States v. Sandoval-Lopez*, 409 F.3d 1193, 1195 (9th Cir. 2004) (acknowledging that the Supreme Court decision in *Roe* "laid out the 'proper framework for evaluating an ineffective assistance of counsel claim, based on counsel's failure to file a notice of appeal'").

It is important to note that Ortiola does not indicate that he actually wished to appeal his sentence, nor does he allege that he communicated a desire to appeal his sentence to Attorney Trapp.[7] Instead, Ortiola asserts that under Ninth Circuit Rule 4-1(a) of the Federal Rules of

---

[6] In paragraph 10 of his Plea Agreement, Ortiola specifically waived his right to appeal or collaterally attack his conviction. The sole right reserved to him was to appeal his sentence. *See* Docket No. 19.

[7] More specifically, the grounds set forth in his petition are as follows:

> On September 20, 2006, during my sentencing, the visiting District Court Judge gave my attorney the oppertunity [sic] to

5

Appellate Procedure,[8] counsel had an affirmative duty to consult with him and failure to do so is *per se* ineffective. However, Ortiola cites no law to support this proposition. In fact, Ortiola's position is directly contrary to the Supreme Court's holding in *Roe* which explicitly rejected "a bright-line rule that counsel must always consult with the defendant regarding an appeal." 120 S.Ct. at 1036.

### *ROE* ANALYSIS.

The petitioner in *Roe* pled guilty to second degree murder and was sentenced to fifteen (15) years to life in state prison. The trial judge told him he could file and appeal within 60 days from the date of sentence and that, if he could not afford counsel, counsel would be appointed to represent him on appeal. The public defender wrote, "bring appeal papers," in her file, but no notice of appeal was filed within the permitted time. The petitioner subsequently tried to file a notice of appeal, but the clerk rejected the notice as untimely. The petitioner then sought habeas relief, and the case proceeded to the Supreme Court. The Court adjudged the claim under the familiar test of *Strickland*.

---

> appeal my sentence within 10 (ten) days. Within those 10 days, my attorney did not give me any feedback nor showed anymore interest in my case. I last spoke to my attorney on November 28, 2006 (Tuesday) via telephone and his only advise [sic] was, that I should just serve the time. Therefore, I felt that my attorney had denied or rejected me of any assistance which would have been effective.

*See* Petition, Docket No. 48 at 4.

[8] The rule is as follows:
> **(a) Continuity of Representation on Appeal**
> Counsel in criminal cases, whether retained or appointed by the district court, shall ascertain whether the defendant wishes to appealand file a notice of appeal upon the defendant's request. Counsel shall continue to represent the defendant on appeal until counsel is relieved and replaced by substitute counsel or by the defendant pro se in accordance with this rule. If counsel was appointed by the district court pursuant to 18 U.S.C. § 3006A and a notice of appeal has been filed, counsel's appointment automatically shall continue on appeal.

In the context of whether counsel must file an appeal, the Court first held that "a lawyer who *disregards specific instructions* from the defendant to file a notice of appeal" is *per se* deficient. *Id.* at 477, 120 S.Ct. at 1035 (emphasis added). At the other end of the spectrum, a petitioner cannot complain of ineffective assistance if he explicitly tells his attorney not to file an appeal and the attorney follows those instructions. *Id.*

The more difficult question presented in *Roe* and in the instant case, is whether counsel is deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other. The first inquiry that the court must make in this circumstance is "whether counsel in fact consulted with the defendant about an appeal." *Id.* at 478. "Consult" is defined as "advising the defendant about the advantages and disadvantages of an appeal and making a reasonable effort to discover the defendant's wishes." *Ibid.*

***Consultation.*** In the instant case, Attorney Trapp indicated in his testimony, that he did discuss with Ortiola the possibility of appealing his sentence. This occurred while preparing for the sentencing hearing. During this meeting Ortiola agreed with Attorney Trapp's assessment that despite the outcome of the application of the abuse of trust enhancer, an appeal would not be pursued as there was "little to no chance of prevailing." Attorney Trapp confirmed this was still the case after the sentencing when he referenced their prior conversation where they agreed not to appeal. This exchange with Ortiola reaffirmed that Ortiola and Attorney Trapp were still "on the same wavelength." Based on the uncontested testimony provided by Attorney Trapp, the court finds that counsel's discussions with Ortiola prior to the sentencing hearing coupled with the follow- up of that discussion post-sentencing, constitute "consultation" as defined in *Roe*. Since counsel did consult with Ortiola, counsel is ineffective only if he failed to follow Ortiola's express instructions about an appeal. *Id.* As Ortiola never gave Attorney Trapp express instructions to file an appeal, but in fact agreed not to file an appeal, the court finds that Attorney Trapp's actions in not filing a notice of appeal were professionally reasonable under the totality of the circumstances.

***Duty to Consult.*** Assuming arguendo that Attorney Trapp's conversations with Ortiola did not rise to the level of consultation, under *Roe* the next question to be answered is "whether

7

counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* In other words, when does counsel have an obligation to consult with his client about an appeal?

Ortiola argues that courts have the right to expand an individuals rights beyond those enumerated within the Constitution. He asserts that Rule 4-1 is an example of an expansion of those rights and as a result should control. However, he cites no law to support this assertion. The *Roe* Court acknowledged that the better practice is for counsel routinely to consult, and recognized that some jurisdictions impose a *per se* duty on counsel to consult with defendants about the possibility of an appeal. Notwithstanding this, the Court affirmed its prior ruling under *Strickland*, indicating that:

> the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices. We cannot say, as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient. Such a holding would be inconsistent with both our decision in *Strickland* and common sense.

*Id.* at 1036. (citations omitted). Thus, the Court specifically rejected the Ninth Circuit's bright-line rule that failure to consult was per se unreasonable.[9]

Instead, *Roe* dictates that where counsel failed to consult, a court must determine whether counsel had a duty to consult. A constitutional duty to consult exists where there is reason to think either (1) that a rational defendant would want to appeal (i.e. there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. 120 S.Ct. at 1036. The inquiry must examine all relevant factors in a given case, what counsel knew or should have known, and the totality of the circumstances including but not limited to (1) whether the conviction follows a trial or a guilty plea; (2)

---

[9] The Supreme Court acknowledged that the Court of Appeals for the Ninth Circuit had a bright-line rule that "[c]ounsel must file a notice of appeal unless the defendant specifically instructs otherwise; failing to do so is *per se* deficient." The Court indicated that "such a rule effectively imposes an obligation on counsel in all cases either (1) to file a notice of appeal, or (2) to discuss the possibility of an appeal with the defendant, ascertain his wishes, and act accordingly. We reject this per se rule as inconsistent with *Strickland*'s holding that 'the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'" *Roe*, 120 S.Ct. at 1035. (citing *Strickland*, 466 U.S. at 688).

whether the defendant received the sentence bargained for; and (3) whether the plea expressly reserved or waived some or all appeal rights. *Id.*

The Court posed the following example:

> a defendant consults with counsel, counsel advises that a guilty plea probably will lead to a two year sentence, the defendant expresses satisfaction and pleads guilty, the court sentences the defendant to two years as expected, the court informs the defendant of his appeal rights, and he does not express any interest in appealing.

*Roe*, 120 S.Ct. at 1036. If counsel in that case concludes there are no non-frivolous grounds for appeal, he is likely not, said the Court, acting unreasonably if he does not consult regarding an appeal. Another example provided by the Court is when a sentencing court's instructions about appeal rights in a particular case are "so clear and informative as to substitute for counsel's duty to consult." *Id.* Under this scenario the court recognized that it would be reasonable for counsel to decide that he does not need to repeat the information already provided by the court.

The instant case is substantially similar to the former example and is analogous to the latter. Evidence of Ortiola's guilt was overwhelming as the case involved a controlled drug buy that was recorded by law enforcement. Ortiola entered into a Plea Agreement waiving his right to appeal the conviction but retained his right to appeal the sentence imposed. Plea and waiver of appellate rights is indicative of the fact that Ortiola desired an "end to judicial proceedings." *Id.* at 1036.

The court finds the uncontested testimony of Attorney Trapp highly credible. Attorney Trapp indicates he discussed the plea agreement with Ortiola and the likely sentence. He also explained the waivers in paragraph 10 in detail. Ortiola agreed and entered a plea. Prior to sentencing, counsel met with Ortiola and discussed what the likely sentence would be both with and without the application of the abuse of trust enhancer. The possibility and likelihood of winning on appeal were discussed and Ortiola and counsel agreed that even if the court imposed the abuse of trust enhancer an appeal would not be pursued. Counsel was satisfied that Ortiola understood his options and that they were "on the same wavelength."

//

The sentence imposed by the court was exactly as expected (that which was previously discussed between Ortiola and counsel when Ortiola agreed not to appeal). The court sentenced Ortiola to the minimum on count one per the guidelines and the mandatory minimum on count two pursuant to statute. *See* 18 U.S.C. 924(c)(i). The only difference between what the defendant asked for at sentencing and what he received was 60 days (based on the application of the abuse of trust enhancement).

The court has also reviewed the sentencing transcript in this matter. After imposition of the sentence, the court was extremely detailed in its explanation of Ortiola's appellate rights. The court addressed the waiver of appeal as to his conviction but told Ortiola that if he felt the waiver was somehow involuntary or unenforceable he may be able to appeal his conviction in addition to his sentence. Ortiola was informed that if he wished to file an appeal for any reason it must be done within 10 days of the entry of judgement. The court instructed Ortiola that he had a right to have the costs waived if he could not afford them, in addition to having an attorney appointed if he could not afford one. Most importantly, the court told Ortiola that the clerk of court would file a notice of appeal on his behalf if he requested it. Ortiola himself acknowledged that he understood these rights as enumerated by the court.[10]

---

[10] The relevant portions of the transcript are as follows:

> THE COURT: The waivers that you have agreed to in your plea agreement concerning the plea are generally enforceable. However, you can make an argument that the waiver itself was somehow unenforceable or illegally obtained.
>
> Also, in light of the plea agreement, you have the right within ten days of judgment being entered in this case in which to file a notice of appeal; that applies to both situations that I've just given you. If you wish to file a notice of appeal for any reason, it must be done so within ten days of judgment being entered in this case. If you cannot afford the cost of the appeal, those can be waived.

United States v. Jason Coburian Ortiola, Criminal Case No.05-00047
*Order re: 2255 Motion*

After sentencing, while getting ready to leave the courtroom, counsel "checked in" with Ortiola, reiterating that they had agreed not to appeal. Attorney Trapp indicated that Ortiola did not express dissatisfaction or surprise regarding his sentence. Ortiola did not give him any indication that he wished to appeal his sentence at any time after the sentence was imposed or prior to the deadline for filing an appeal had passed. Additionally, Attorney Trapp asserted that if he had any indication whatsoever that Ortiola did desire an appeal he would have filed one immediately.

Attorney Trapp has extensive experience in criminal and appellate matters. He testified that he had a good relationship with Ortiola, describing him as a quiet, respectful, bright individual who would ask questions if he needed clarification on an issue. The court notes that Ortiola was also a law enforcement officer, and as such would have more of an understanding of the legal and judicial system than the typical defendant. This court believes that based on Attorney Trapp's experience with these kind of cases, his relationship with Ortiola, his prior discussions with Ortiola regarding appeal, Ortiola's sentence was as expected, and the court's detailed explanation of Ortiola's appeal rights in this matter were so clear and informative that counsel was reasonable in deciding not to reiterate the information.

After consideration of the totality of the circumstances, the court finds that a rational defendant in Ortiola's position would not have desired an appeal and Ortiola did not reasonably demonstrate to Attorney Trapp that he was interested in appealing. Accordingly, this court finds that no duty to consult existed.

---

> If you cannot afford the cost of an appellate attorney, those can be waived as well. And if you so request, the clerk of the court will file the notice of appeal on your behalf.
>
> Mr. Ortiola, do you understand your rights of appeal as I have just given them to you?
>
> ORTIOLA:   Yes, I do, Your Honor.

*See* Sentencing Transcript, Docket No.63, 20-21.

11

Case 1:05-cr-00047   Document 64   Filed 04/17/2007   Page 11 of 13

***Prejudice.*** Even if this court had determined that counsel had a duty to consult but failed to do so, the court must move to the second prong of *Strickland* and determine whether Ortiola was prejudiced by counsel's failure to consult. *Roe* explains that to show prejudice Ortiola "must demonstrate that there is a reasonable probability that but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 1038-40. Evidence of a non-frivolous ground for appeal or that the defendant promptly expressed a desire to appeal will often be highly relevant. *Id.*

Although Attorney Trapp indicated that he believes the issue concerning the application of the abuse of trust enhancement at sentencing could be considered a non-frivolous ground for appeal, this is not the sole factor that the court must analyze in considering the prejudice prong. Other factors, including but not limited to Ortiola's demeanor and conversations with counsel prior to and immediately after sentencing, and his actions and statements after the filing deadline had past, including the nature of his request in this case are also highly relevant for the court to consider. It is probative that Ortiola is not claiming a sentencing error at all rather his *pro se* petition indicates that he is seeking a sentence reduction. *See* Petition, Docket No. 48, 13. Ortiola also attached a letter to his petition which is conclusive evidence of his intent to obtain a sentence reduction, not to appeal his sentence.[11] Ortiola's letter is dated the very same day that he was to surrender himself to the U.S. Marshal. Ortiola did not contact Attorney Trapp at all until the day to surrender himself to the U.S. Marshal was imminent. Even then his inquiries to Attorney Trapp were surrounding a sentence reduction not an appeal.

Additionally, Ortiola's counsel in his reply and his argument to the court does not assert that Ortiola would have appealed if he had been consulted. Nor does he indicate that after his

---

[11] The first sentence of Ortiola's letter states "[t]he reasons and purpose for the following paragraph(s) is a petition of a request for a reduction of sentence and is also to convey my expressions of remorse and my utmost and sincerest apologies to any and all individuals involved in my case." *See* Petition, Docket No.48, 14. Subsequent to his own letter, Ortiola attached four other letters from members of the community attesting to his good moral character and all requested a sentence reduction. All of the letters were dated in mid November well after the deadline had expired to file a Notice of Appeal and a mere 6-7 days before Ortiola was to surrender himself to the U.S. Marshal.

sentence but before the deadline for filing a notice of appeal ran, Ortiola wished to file an appeal. Rather, counsel proffers that Ortiola *now* wishes to appeal his sentence after the fact. The issue is not what Ortiola wants to do now but what he would have done in those ten days after he was sentenced. The record is devoid of any evidence to indicate that had Attorney Trapp consulted with Ortiola, he would have timely appealed.

As such, the court finds that even if Attorney Trapp had a duty to consult, Ortiola has failed to demonstrate that there is a reasonable probability that, but for counsel's failure to consult with him about an appeal, he would have timely appealed.

## CONCLUSION

After a complete review of the record in this matter, and based on the above, this court finds that Ortiola is not entitled to relief. Accordingly, Ortiola's motion for relief pursuant to 28 U.S.C. § 2255 is **DENIED**. The U.S. Marshal shall transport Ortiola to his designated prison facility to serve the remainder of his sentence forthwith.

**IT IS SO ORDERED** this 17th day of April, 2007.



/s/ Frances M. Tydingco-Gatewood
Chief Judge